**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                              :
                                                         :
            Plaintiff,                                   :   Civil Action No. 22-cv-4423
                                                         :
v.                                                       :   **COMPLAINT FOR VIOLATIONS OF**
                                                         :   **SECTIONS 14(a) AND 20(a) OF THE**
NATUS MEDICAL INCORPORATED,                              :   **SECURITIES EXCHANGE ACT OF**
JOSHUA H. LEVINE, THOMAS J.                              :   **1934**
SULLIVAN, ILAN DASKAL, ERIC J.                           :
GUERIN, LISA WIPPERMAN HEINE,                            :   **JURY TRIAL DEMANDED**
BRYANT M. MOORE, PH.D., and ALICE D.                     :
SCHROEDER,                                               :
                                                         :
            Defendants.                                  :
--------------------------------------------------------
                                                         :

        Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.      This is an action brought by Plaintiff against Natus Medical Incorporated ("Natus

or the "Company") and the members Natus' board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Natus by affiliates of ArchiMed Group ("ArchiMed").

        2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on May 23, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Prince Mergeco Inc. ("Merger Sub"), a wholly-owned subsidiary of Prince Parent Inc. ("Parent"), will merge with and into Natus with Natus surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 17, 2022 (the "Merger Agreement"), each Natus stockholder will receive $33.50 in cash (the "Merger Consideration") for each Natus share owned.

1. As discussed below, Defendants have asked Natus' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor Stifel Nicolaus & Company ("Stifel") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Natus' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District, and the Company's proxy solicitor, MacKenzie Partners, is also headquartered in this District.

**PARTIES**

7.      Plaintiff is, and has been at all relevant times, the owner of Natus stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant Joshua H. Levine has served as a member of the Board since 2018 and is the Chairman of the Board.

9.      Individual Defendant Thomas J. Sullivan has served as a member of the Board since 2019 and is the President and the Chief Executive Officer of the Company.

10.      Individual Defendant Ilan Daskal has served as a member of the Board since 2020.

11.      Individual Defendant Eric J. Guerin has served as a member of the Board since 2021.

12.     Individual Defendant Lisa Wipperman Heine has served as a member of the Board since 2018.

13.     Individual Defendant Bryant M. Moore, Ph.D. has served as a member of the Board since 2021.

14.     Individual Defendant Alice D. Schroeder has served as a member of the Board since 2019.

15.     Defendant Natus is a Delaware corporation and maintains its principal offices at 3150 Pleasant View Road, Middleton, WI 53562.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "NTUS."

16.     The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

18.     Natus provides medical device solutions focuses on the diagnosis and treatment of patients with central nervous and sensory system disorders worldwide. It offers products and technologies used for the screening, detection, treatment, monitoring, and tracking of common medical ailments in newborn care, hearing impairment, neurological and neurosurgical treatments, epilepsy, sleep disorders, and neuromuscular diseases. The Company also provides computerized neurodiagnostic systems for audiology, neurology, polysomnography, and neonatology; and software systems for managing and tracking disorders and diseases for public health laboratories. In addition, it offers electroencephalography, long term monitoring, intensive care unit monitoring, electromyography, sleep analysis or polysomnography, and intra-operative monitoring solutions.

Further, the Company provides hearing assessment, screening, and instrument fitting solutions; jaundice management products; brain injury products; and eye imaging systems and products used in the advanced science and practice of neonatal and pediatric retinal imaging. Additionally, it offers essential products used in the everyday operation of neonatal intensive care unit (NICU); balance assessment systems to evaluate patients with balance disorders; and NICVIEW, a live streaming video for families with babies in the NICU. The Company also provides computer-based audiological, otoneurologic, and vestibular instrumentation for hearing and balance care professionals. It serves university medical centers, public and private hospitals, physician offices, clinics, research laboratories, and others. The Company was formerly known as ALGOTEK Instruments, Inc. and changed its name to Natus Medical Incorporated in September 1988. Natus was incorporated in 1987 and is headquartered in Middleton, Wisconsin.

19.    On April 18, 2022, the Company and ArchiMed jointly announced the Proposed Transaction:

> MIDDLETON, Wis., April 18, 2022 (GLOBE NEWSWIRE) -- **Natus Medical Incorporated** (NASDAQ: NTUS), (the "Company" or "Natus"), a leading provider of medical device solutions to screen, diagnose, and treat disorders affecting the brain, neural pathways, and eight sensory nervous systems, announced today that it has entered into a definitive agreement to be acquired by an affiliate of ArchiMed ("ArchiMed"), a leading investment firm focused exclusively on the healthcare industry for approximately $1.2 billion. Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock, representing a 29% premium to the closing price of the Company's common stock on April 14, 2022.
>
> "The sale of Natus to ArchiMed will provide our shareholders with immediate and substantial cash value, as well as a compelling premium, and the Board has unanimously agreed that this transaction is in the best interests of our shareholders," said Joshua H. Levine, Chairman of Natus.

"Our nearly 1,400 Natus Teammates remain committed to advance the standard of care and improve outcomes and quality of life for patients affected by disorders of the brain, neural pathways, and eight sensory nervous systems," said Thomas J. Sullivan, President & Chief Executive Officer of Natus Medical, Incorporated. "ArchiMed's mix of operational, medical, scientific and financial expertise will help us continue our mission to serve our customers while delivering immediate value to shareholders."

Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock they own. The transaction has fully committed equity financing from funds affiliated with ArchiMed and fully committed debt financing, and there are no financing conditions associated with the transaction.

Natus's Board of Directors has unanimously approved the merger agreement with ArchiMed and recommends that Natus's shareholders adopt the merger agreement. In connection with the transaction, the Company will prepare a proxy statement to be filed with the U.S. Securities and Exchange Commission ("SEC"). Following any review by the SEC, a definitive proxy statement will be mailed to shareholders of Natus. Natus expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement. The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including approval by Natus shareholders and receipt of regulatory approvals. Upon completion of the transaction, Natus will become a private company and Natus shares will no longer be listed on any public market.

Under the terms of the merger agreement, Natus may solicit proposals from third parties for a period of 30 days continuing through May 17, 2022, and in certain cases for a period of 35 days continuing through May 22, 2022. In addition, Natus may, at any time prior to receipt of shareholder approval, subject to the provisions of the merger agreement, respond to unsolicited proposals that constitute or would reasonably be expected to lead to a superior proposal. Natus will have the right to terminate the merger agreement with ArchiMed to enter into a superior proposal subject to the terms and conditions of such agreement, including payment of a customary termination fee. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Natus does not intend to disclose developments with respect to this solicitation

process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Preliminary                 Financial                 Results**
Revenue for the first quarter 2022 was $119.8 million, up 4.3% compared to $114.9 million in the first quarter 2021. During the first quarter of 2022, Natus incurred $3.4 million of extraordinary supply chain costs associated with acquiring semiconductors. The Company ended the quarter with $84 million in cash and no debt, up from $75.6 million at the beginning of the quarter.   The Company will release its full 2022 first quarter financial results after the close of the market on Thursday, May 5th. The previously announced conference call scheduled for Friday, May 6th at 8:00 a.m. Eastern Time (5:00 a.m. Pacific Time) will be cancelled.

**Financial                                 Guidance**
Due to the announced transaction, the Company will no longer update financial guidance.

**Advisors**
In connection with the transaction, Stifel is serving as a financial advisor to Natus, and Davis Polk & Wardwell LLP is serving as legal advisor to Natus.

\* \* \*

20.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Natus's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     <u>The Materially Incomplete and Misleading Proxy Statement</u>**

21.     On May 23, 2022, Natus filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material

misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22.     The Proxy Statement fails to provide material information concerning financial projections by Natus management and relied upon by Stifel in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Stifel with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Natus management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

23.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, Unlevered Free Cash Flow (without proposed divested assets), and Unlevered Free Cash Flow (plus proposed divested assets), but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the

non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

24.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

25.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

26.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

27.     With respect to Stifel's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

28.     With respect to Stifel's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transactions selected for the analysis.

29.     With respect to Stifel's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for Natus; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.0% to 4.0%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 10% to 12%; and (v) the Company's weighted average cost of capital.

30.     With respect to Stifel's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the companies and the premiums of the transactions observed in the analysis.

31.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

34.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

35.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

36.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

37.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     The Individual Defendants acted as controlling persons of Natus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Natus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Natus, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

40.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Natus, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

42.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

43.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

45.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 28, 2022                          **MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*
      Gloria Kui Melwani
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*